## Case No. 13,409.

### STEVENS v. The SANDWICH.

[1 Pet. Adm. 233.] [1]

District Court, D. Maryland. 1801.

ADMIRALTY—JURISDICTION—MARITIME LIENS—REPAIRS—WAIVER.

[1. Every contest or dispute between the owners and mariners and the owners and builders or equippers of a ship, for navigation on the sea, is of a maritime nature, and cognizable in the admiralty.]

[Cited in The Richard Busteed, Case No. 11,-764; Davis v. The Seneca. Id. 3,650; Waterbury v. Myrick, Id. 17,253. Approved in Thackerey v. The Farmer of Salem, Id. 13,-852; Ludington v. The Nucleus, Id. 9,598.]

[Cited in Re The Josephine, 39 N. Y. 26.]

[2. By the general maritime law a shipwright has a lien for the value of materials. labor. etc., expended by him in repairing a vessel in port.]

[Cited in Zane v. The President. Case No. 18,201; The Jerusalem. Id. 7,294; Ramsay v. Allegre, 12 Wheat. (25 U. S.) 626; Cunningham v. Hall. Case No. 3,481; Phillips v. The Thomes Scattergood. Id. 11,-106; New Jersey Steam Nav. Co. v. Merchants' Bank, 6 How. (47 U. S.) 390.]

[3. A maritime lien for repairs may be relinquished or lost by acts which show that other securities have been substituted and accepted therefor. and the court, in examining the testimony applicable to this point, will make every presumption that a jury ought to make on the trial of questions of fact.]

[Cited in The Utility, Case No. 16,806; Leland v. The Medora, Id. 8,237.]

[4. The admiralty jurisdiction over a maritime cause is, in its nature, complete. It extends to

[1] [Reported by Richard Peters, Jr., Esq.]

the person as well as to the res, and cannot be confined to one of the remedies on a contract when the contract itself is within the cognizance of the court.]

[Cited in De Lovio v. Boit, Case No. 3,776; The Panama, Id. 10,703; U. S. v. New Bedford Bridge, Id. 15,867.]

[5. Cited in De Lovio v. Boit, Case No. 3,776, to the point that the statutes of Richard II. have received in England a construction which must at all times prohibit their extension to this country; that no principles can be extracted from the adjudged cases in England which will explain or support the admiralty jurisdiction, independent of the statutes, or the works of jurists who have written on this general subject.]

[Cited in Waring v. Clarke, 5 How. (46 U. S.) 473, 490.]

[This was a libel by Stevens against The Sandwich, Adams, claimant.]

WINCHESTER, District Judge. This libel involves the general doctrine of liens for the building or preparation of ships in port, and the jurisdiction of this court. I shall examine both these preliminary questions before I investigate the facts, or decide the merits of the particular case before the court.

By the judiciary act the district court has exclusive original jurisdiction of all civil causes of admiralty and maritime cognizance. And it is somewhat remarkable that neither this act, nor the constitution which it follows, limit the jurisdiction in any respect as to place. It is bounded only by the nature of the causes over which it is to decide. Its jurisdiction will not be better understood than by an inquiry into the original acceptation of admiralty powers. Since they will be found to have been military authority, and entirely contradistinguished from civil judicial powers: and after judicial authority was superinduced, the difference between that which is styled admiralty, and that which is called maritime jurisdiction is merely nominal. A tribunal similar to the district courts of the United States exists in every civilized country, peculiarly invested with the cognizance of all questions which result from the navigation of the sea, in which foreigners are or may be interested, and which are governed by the law of nations. Hence the authority and binding efficacy which has been generally conceded to the sentences of admiralty courts. But independent of the peculiar jurisdiction which appertains to the special laws by which such courts are bounded and governed (Zouch, Jure Marit. 382), other powers are added by the laws of the country in which they are established; and the general application of the term admiralty jurisdiction to municipal jurisdiction, thus added without a correct discrimination of their sources, renders it extremely difficult to restrain the precise import of the terms admiralty and maritime causes, as they are used in our constitution and laws. In England the control of their own navy, in France the right of fishery, in Holland the preservation of the dykes and mounds, and in Denmark and Sweden the superintendence of the revenue, are confided to their courts of admiralty—and different as they are in their qualities, and local as they are in their nature, they are alike denominated admiralty causes. The policy, justice or general convenience of the local regulations of commercial states, have been more or less adapted or extended to different countries; and what all adopted, all became equally interested to support. The civil law, the laws of Rhodes, and Oleron, and the particular municipal regulation of towns and nations bordering on the sea (see 2 Bac. Abr. 184), became of course the common rule of decision. In England, where the jealousy of the civil law was most conspicuous, while its authority was openly denied, the principles of equity derived from that Code, influenced the decisions of their courts in as great a degree as in countries where it was adopted.

In all of which from the books within my power, I can obtain any legal information, every contest or dispute, between the owners and mariners, and the owners and builders, or equippers of a ship for navigation on the sea, is of a maritime nature and cognizable in the admiralty. The statutes 13 & 15 Rich. II. have received in England a construction which must at all times prohibit their extension to this country. The reports of decisions in the courts of that country are perfectly irreconcilable. A latitude of jurisdiction has been allowed by able and liberal judges, which to others, perhaps no less wise or virtuous, were deemed inconsistent with the statute of Richard II.; as in the case of a charter party signed and sealed at land, it is holden that the admiralty has cognizance because it is a marine cause, and seamen's wages, though admitted to be a marine cause, are held not to be cognizable in the admiralty court, if the instrument is sealed, because the admiralty cannot try the deed. Salk. 31. Thus, in one case, the reason why a cause is held to be cognizable in the admiralty court, is the foundation for refusing it in another. And in another, to wit, a dispute between part owners whether a ship shall be sent to sea? is allowed to be cognizable, although the whole dispute arises on land, and is only collateral to a marine cause. I mention these cases to shew that no principles can be extracted from the adjudged cases in England, which will explain or support the admiralty jurisdiction, independent of the statutes, or the works of jurists who have written on the general subject.

Within the cognizance of this jurisdiction are all affairs relating to vessels of trade, and the owners thereof, as such; and all matters which concern owners, proprietors of ships as such—all causes of pawning, hypothecating or pledging of the ship or vessel itself, or any part thereof, at sea, and whatever is of a maritime nature, either by way of navigation upon the seas, or negociation at or beyond the sea, in the way of marine trade or commerce—also the nautic right which mari-

time persons have in ships, their tackle, &c. Likewise all causes of out-riggers, furnishers, owners, and part owners of ships, as such. See, also, Beaw. Lex Merc. 282 (cites Wood, Inst. 813). It is allowed by the common lawyers and civilians, that the admiralty has cognizance of seamen's wages and contracts and debts for making ships. Postlethwaite is supported in his principles as to jurisdiction between co-owners, by Carth. 26, Beawes and Wood, and by the authorities in Rolles, Abr. 533. So in Zouch, Elem. 370. Its jurisdiction extends to all causes of navigation and maritime negociation; and according to 1 Bac. § 178, its authority to all the incidents and consequences of such causes—So in France, according to 1 Valin, Comm. 362, this is a proper question for admiralty jurisdiction; and he cites Vinnius and Lacennorius as authorities to justify the French practice. Again in Zouch, a corresponding practice in the courts of Holland, Hamburgh and Great Britain is relied on in evidence of the jurisdiction; and the decision of the state court in the case of Glass and Gibb, in which all the powers of an instance and prize-court as they are divided in England, are held to belong to the district courts. I am therefore of opinion, that the court has jurisdiction of the matter stated in this libel.

Has a shipwright a lien on the vessel by him repaired, for the value of his materials, labor, &c. is the second question in this case. To decide this question it is necessary to examine the nature of liens and privileged debts, at the civil law. Liens by the civil law are, 1st, express; 2d, privileged; 3d, implied or legal. A difference is taken between the "pignus" which can only be of personal property actually delivered to the creditor—and the "hypotheca," which is of real estates, and over which a right only is assigned to the creditor, the debtor remaining in possession. The terms however are convertible, and the legal incidents the same. The simple pledge or mortgage corresponds to that in use in England and this country, and a comparison of the British decisions with the Digest will shew that our system is almost wholly drawn from that Code. 2d. A privileged mortgage, on which, if the remedy pursued be personal, the privilege is according to the order of time only; but if the remedy is pursued in rem the privilege operates without respect to time, and according to the cause of the debt, according to Zouch; privileged, are those creditors who are to be preferred, in the course of payment, before other creditors, though prior in time, e. g. funeral charges, which are an expense of necessity, and the costs of an administration, which are for the common benefit of creditors. 3d. Implied or legal. These are given by law upon the presumed assent of the parties, where no express stipulation appears; as is the case of seamen's wages, storage of goods, and the distress for rent; of the lat-

ter description must be the libellant's case, if he has any lien at all. All the authorities of the civil law admit a ship-carpenter into the class of privileged creditors, without any regard to the place where the services are rendered; but it is not conceded by all, that he has the jus hypotheca. It is manifest his lien cannot be supported on principles of common law, since the very nature of the services of repairing a ship, precludes the idea of possession transferred from the owner. And the common law, which pursues strictly the old distinction of civil law between pignus and hypotheca only admits a lien, where there is an actual possession passed to the creditor. The extent of the incidents to a privileged debt are not necessary to be inquired into. By some civilians, cited by Zouch, a ship-carpenter is only considered as having a right of preference above other creditors, when the whole of the goods are insufficient to pay the aggregate of debts, and the jus hypotheca is denied. But Zouch, who I find is supported by the Digest, lib. 20, § 21, vol. 1, Corp. Jur. Civ. 1916, 1924, and 1932, supports his lien by the opinions and practice of other jurists, and the courts of Hamburgh, Holland and Great Britain, and satisfactorily explains the causes of the erroneous opinions of writers, who deny the lien of such a creditor to have arisen from not accurately attending to the difference between a simple privileged debt, strictly such, where among many of similar creditors the rule, "Prior in tempore potior est jure," prevails, and a privileged mortgage or lien express or implied, where the cause of the debt, and not the time of its creation, governs.

The reason of the lien to ship-carpenters for repairs, independent of considerations of policy, even among contending mortgagees, is, that such services preserve the specific thing from destruction, and securing such subsequent creditors does not injure prior mortgagees or creditors, since the pledge is increased in value, in proportion to such services. 1 Valin, Comm. states, a corresponding opinion in France, and assigns the reason of the civil law. I am therefore of opinion, that a ship-carpenter, by the maritime law, has a lien on the ship for repairs in port. But this lien may be relinquished or lost, by acts which shew that other securities have been substituted and accepted; and the court, in examining the testimony applicable to this point, will make every presumption that a jury ought to make on the trial of questions of fact, but as the interest of no other creditor is involved in the libellant's claim, I cannot conceive of what importance it is now to ascertain whether his lien continues—since the cause being a maritime cause, the court has a jurisdiction over his person as well as over the ship. The jurisdiction must in its nature be complete—it cannot be confined to one of the remedies on a contract, when the contract itself is within its cognizance.